## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | CASE # 3:13-cr-22 |
| | : | |
| vs. | : | |
| | : | |
| ROBERTO TAPIA, | : | |
| ANGELO HILL, | : | |
| STEPHEN TORRES, | : | |
| EDDIE LOPEZ LOPEZ, | : | |
| RAYMOND BROWN, | : | |
| EDWIN MONSANTO, and | : | |
| HECTOR ALCENIO, | : | |
| Defendants. | : | |
| _____ | : | |

**MOTION TO SUPPRESS –
EVIDENCE OBTAINED THROUGH ADMINISTRATIVE SUBPOENAS**

**COMES NOW** Defendant, **STEPHEN TORRES**, by and through his undersigned counsel, pursuant to Federal Rules of Criminal Procedure 12, the Court's inherent powers, hereby files this Motion to Suppress pursuant to the Fourth Amendment, made applicable by the Revised Organic Act, and hereby states as follows:

### I.   INTRODUCTION

"On coins, on stamps, on the covers of books, on banners, on posters, and on the wrappings of a cigarette Packet — everywhere. Always the eyes watching you and the voice enveloping you. Asleep or awake, working or eating, indoors or out of doors, in the bath or in bed — no escape. Nothing was your own except the few cubic centimetres inside your skull." George Orwell, *1984,* Part one, Chapter two (Harcourt Brace, 1949).

## II.    BACKGROUND

Starting sometime in early 2011[1] the Drug Enforcement Agency started to issue Administrative Subpoenas to a various telecommunication companies ostensibly pursuant to 21 U.S.C. § 876.  Attached hereto as composite Exhibit A are the Administrative Subpoenas provided in discovery by the Government to the Defendant.[2]  The individuals issuing the Admin. Subpoenas include (but may not be limited to) Fred G. Ott (*see* Ex. A. at p. 1), James N. Doby (*see* Ex. A at p. 2), Timothy T. Williams (*see* Ex. A. at p. 3), Eric. B. Barnard (*see* Ex. A at p. 9), Corazon A. Fister (*see* Ex. A at p. 47), and Michael E. Grossman (*see* Ex. A. at p. 52).

The telecommunication companies include (but may not be limited to) AT&T (*see* Ex. A at p. 1), Metro PCS Wireless, Inc. (*see* Ex. A at p. 2), Sprint Nextel Corporation (*see* Ex. A at p. 44), Commnet Wireless (*see* Ex. A at p. 61), Total Call International (*see* Ex. A at p. 73), Innovative Wireless (*see* Ex. A at p. 75), Virgin Islands Telephone Corp. (*see* Ex. A at p. 280), Vitelcom Cellular, Inc. (*see* Ex. A at p. 283), T-Mobile USA, Inc. (*see* Ex. A at p. 303), Cordia Communications (*see* Ex. A at p. 311), Cellco Partnership d/b/a Verizon Wireless (*see* Ex A at p. 313), and Open Mobile (*see* Ex. A at p. 347).

The Government provided in discovery, *inter alia,* a Microsoft Excel spreadsheet titled "KS-08-0016 SUBSCRIBERS JAN 2012-MAY 2013," which detailed the name of the telephone number subscriber, the address of the telephone number subscriber, and the telephone number.  Attached hereto as Exhibit B is a printout of the telephone number subscribers, sorted alphabetically.  Attached hereto as Exhibit C is a printout of the telephone numbers, sorted serially.[3]  The

---

[1] *See* Exhibit A at p. 314 (Admin. Subpoena issued on February 24, 2011).
[2] The Defendant has a pending Appeal of the denial of his motion to compel the production of Administrative Subpoenas (Doc. # 265) and a pending Motion to Dismiss (Doc. # 117).  The filing of the instant motion is *not* a waiver of said filings.
[3] Because Exhibits B and C have been sorted the telephone numbers and the subscribers have been de-coupled and cannot be correlated.  In other words, if one lays Exhibits B and C side by side the

Government's dragnet has resulted in over 1500 lines of information corresponding to different telephone numbers and the telephone number's attendant subscriber.

Included in the Government's dragnet is an attorney representing a co-defendant in this very case, i.e., Attorney Nizar deWood (*see* Ex. B at p. 23); an attorney that represented a co-defendant in this very case, i.e., Attorney Judith Borne (*see* Ex. B at p. 4); other attorneys, i.e., Attorney Henry Smock (*see* Ex. B at p. 12), and Attorney Rosh Alger (*see* Ex. B at p. 28); the Clerk of the District Court of the Virgin Islands, i.e., Attorney Glenda Lake (*see* Ex. B at p. 11); the Office of the Governor of the Virgin Islands (*see* Ex. B at p. 23); and sitting Virgin Islands Supreme Court Chief Justice Rhys S. Hodge (*see* Ex. B at p. 12).

### III.   APPLIC ABLE LAW

#### A.   Constitutional Law

The Fourth Amendment protects citizens from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const, amend. IV.  "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).  There is a presumptive requirement that searches or seizures be carried out pursuant to a warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967)  ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well -- delineated exceptions.") (internal citations omitted).  "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter,* 416 F.3d 256, 261 (3d Cir. 2005).

---

telephone number does not match the individual.  The undersigned has done this so that the individuals' telephone numbers do not become public record; however if the Court would like a copy of the spreadsheet as provided he will be happy to provide it under seal and in ESI format.

B.     Administrative Law

"The authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute." *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988).

21 U.S.C. § 876(a) provides that:

> In any investigation relating to his functions under this subchapter with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines, the Attorney General may subpena witnesses, compel the attendance and testimony of witnesses, and require the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to the investigation.

The Administrator of the DEA has been delegated the authority to investigate violations of the Comprehensive Drug Prevention and Control Act of 1970.  28 C.F.R. § 0.100.  Where individual liberties are at stake subdelegation must be express.  *Greene v. McElroy*, 360 U.S. 474, 506-07 (1959).

## IV.     DISCUSSION

A.     Standing

Because the telephone subscribers (who have the DEA's Admin. Subpoena directed to their telecommunication carrier) are unaware and are unable to contest the issuance of the Admin. Subpoenas, and attendant responses, the only way for there to be meaningful judicial review is via a third-party, in this case the Defendant.  The Supreme Court has endorsed the ability of criminal defendants to assert violations of third-parties.  *See Powers v. Ohio,* 499 U.S. 400, 406 (1991)("*Batson [v. Kentucy]* recognized that a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large.").  In order to assert the rights of third-parties the litigant must satisfy three criteria:

> The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own. These criteria have been satisfied in cases where we have permitted criminal defendants to challenge their convictions by raising the rights of third parties.

*Id.* at 411(internal citations and quotations omitted).  Here all three prerequisites have been satisfied.

*First*, the Defendant has suffered an injury in fact – the evidence (including the derivative fruits thereof) obtained by the Government through the Admin. Subpoenas has been used to build the Government's case against him most likely will be used against him at trial.  So the Defendant has a more than concrete interest in the outcome of the issue in dispute, *viz.* whether the Government properly used its authority under 21 U.S.C. § 876.

*Second,* the Defendant has a close relation to the third party as "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Powers*, 499 U.S. at 413.  Here, the Defendant is the only one that can be a proponent of the right of the individuals who have been the target of the Admin. Subpoenas.

*Third,* there is a clear hindrance to the third party's ability – (a) there is no mechanism for a third party to intervene in a criminal case, *cf.* Fed. R. Civ. P. 24, (b) the third party was never made aware of the Government's use of Admin. Subpoenas.  As one district court has noted, "[t]he very existence of a right to challenge [a compelled disclosure] presupposes an opportunity to make it." *In re Nwamu*, 421 F. Supp. 1361, 1365 (S.D.N.Y. 1976).  Accordingly, like in *Powers,* in this case the criteria has been satisfied, and this Court must permit a criminal defendant to challenge the evidence by raising the right of the third parties.

*Finally*, the third parties that were the target of the Admin. Subpoenas would themselves have standing as – (a) one has the ability to bring a motion to suppress when he/she has a possessory interest in the item seized and/or searched, *see United States v. Jones,* 132 S. Ct. 945 (2012) (possessory interest in automobile), and (b) one also has the ability to bring a motion to suppress when he/she has a privacy expectation, *see Florida v. Jardines,* 133 S. Ct. 1409, 1418, (2013) (Kagan, J.

concurring citing to *Katz v. United States,* 389 U.S. 347, 360, (1967) (Harlan, J., concurring) (noting that property interest and privacy expectation are two independent legal basis to bring motion to suppress).

### B. Merits

#### 1. No Delegation

The undersigned has not been able to locate any subdelegation order permitting any of the individuals who have issued the subject Admin. Subpoenas the power to do so.  Accordingly, because all of the Admin. Subpoenas were issued in an *ultra vires* manner inconsistent with 21 U.S.C. § 876(a) the evidence and the fruits therefrom must be suppressed.  *See Peters, supra.*

#### 2. Neither Material nor Relevant

The Attorney General's investigation must be "relevant or material."  21 U.S.C. § 876(a).  It is beyond cavil that a court must "presume that Congress's intent is most clearly expressed in the text of the statute, [a court] begin[s] [its] analysis with an examination of the plain language of the relevant provision." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 12-3264, 2013 WL 4752015 (3d Cir. Sept. 5, 2013) (internal citations and quotations omitted).  Words that are not terms of art and that are not statutorily defined are customarily given their ordinary meanings, often derived from the dictionary.  *See, e.g., Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40 (1989) (relying on traditional common law agency principles for meaning of term "employee" as used without definition in the Copyright Act).

"Relevant" is defined as: "having direct bearing on the matter in hand; pertinent." http://dictionary.reference.com/browse/relevant?s=t (last accessed October 15, 2013).  "Material" is "of substantial import; of much consequence; important." http://dictionary.reference.com/browse/material?s=t (last accessed October 15, 2013).

But the blanketing of hundreds of individuals and telephone numbers cannot be said to be either relevant or material. In other words if the Government is looking for the proverbial needle in a haystack it does not follow that "hovering" up the entire haystack is permissible because somewhere in the haystack is relevant or material evidence. To so conclude would allow the exception to swallow the rule and would run contrary to the pain terms of "relevant" and/or "material." Thus, because the Admin. Subpoenas were not designed to obtain either "relevant" or "material" evidence they were improperly issued.

### 3. Government's Dragnet

The purpose of the probable cause requirement is "to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Jones*, 132 S. Ct. 945, 954-55 (2012) (Sotomayor, J. Concurring) (quoting *Kyllo v. United States,* 533 U.S. 27, 31-33 (2001)). The Supreme Court in *Jones* explained that the "reasonable-expectation-of-privacy test" derived from *Katz v. United States*, 389 U.S. 347 (1967), "has been added to, not substituted for, the common-law trespassory test." *Id.* at 952. Acknowledging that its opinion only addressed surveillance that involves a trespass, the majority wrote that "[s]ituations involving merely the transmission of electronic signals without trespass would remain subject to *Katz* analysis." *Id.* at 953.

Here, the use of Admin. Subpoenas are an affront to the Fourth Amendment as it "is cheap in comparison to conventional surveillance techniques and, by design, proceeds surreptitiously, it evades the ordinary checks that constrain abusive law enforcement practices: 'limited police resources and community hostility.'" *Id.* at 956 (quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004)). Indeed, this Court must stand vigilant of the fact that "the Fourth Amendment's goal [is] to curb

arbitrary exercises of police power to and prevent 'a too permeating police surveillance.'" *Id.* quoting *United States v. Di Re,* 332 U.S. 581, 595 (1948).

The Supreme Court explicitly left for another day when "dragnet type law enforcement practices as respondent envisions should eventually occur, there will be time enough then to determine whether different constitutional principles may be applicable." *United States v. Knotts,* 460 U.S. 276, 284 (1983). In the case at bar we have the prototypical dragnet law enforcement where the Government has "hoovered" up a tremendous amount of data – data that the Government can mine for years to come. So, when the Court examines that the Government issued, at a minimum, 376 Admin. Subpoenas directed to no less than 11 telecommunication companies and for an expansive group of individuals that include an attorney involved in the litigation of this case (Attorney Nizar deWood) and the Clerk of the District Court of the Virgin Islands (Attorney Glenda Lake), the Court should have grave concerns that the net that the Government has cast and dragged across the Virgin Islands was far too wide.

The Defendant anticipates that the Government will counter that because in *United States v. Miller*, 425 U.S. 435 (1976), the Supreme Court held that a bank depositor had no expectation of privacy in records about his transactions that were held by the bank there can be no expectation of privacy in this case. The Supreme Court proceeded to consider whether Miller could maintain a reasonable expectation of privacy in the bank's records, noting that "[w]e must examine the nature of the particular documents sought to be protected in order to determine whether there is a legitimate 'expectation of privacy' concerning their contents." *Miller*, 425 U.S. at 442 (internal citation omitted). The conclusion of that analysis—that Miller had no such expectation— turned not on the fact that the records were owned or possessed by the banks, but on the fact that Miller "voluntarily conveyed" their contents to the bank. *Id.* (internal quotation marks and citation omitted).

Further, the Defendant anticipates that the Government will also counter with *Smith v. Maryland,* 442 U.S. 735 (1979). In *Smith,* the Supreme Court held that the use of a pen register to capture the telephone numbers an individual dials was not a search under the Fourth Amendment, 442 U.S. at 739, 742, because individuals voluntarily convey telephone numbers to the phone company, *id.* at 744. But in *Smith*, as in *Miller*, the question of voluntary exposure was not solely dispositive, or else *Smith* would have overruled the Supreme Court's previous holding that telephone callers maintain a reasonable expectation of privacy in their phone calls:

> A telephone call simply cannot be made without the use of telephone company property and without payment to the company for the service. The telephone conversation itself must be electronically transmitted by telephone company equipment, and may be recorded or overheard by the use of other company equipment. Yet we have squarely held that the user of even a public telephone is entitled "to assume that the words he utters into the mouthpiece will not be broadcast to the world."

*Id.* at 746-47 (Stewart, J., dissenting) (quoting *Katz v. United States*, 389 U.S. 347, 352 (1967)).

However, as Justice Sotomayor has stated:

> Awareness that the Government may be watching chills associational and expressive freedoms. And the Government's unrestrained power to assemble data that reveal private aspects of identity is susceptible to abuse.
>
> \*\*\*
>
> *More fundamentally, it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties.*
>
> \*\*\*
>
> But whatever the societal expectations, they can attain constitutionally protected status only if our Fourth Amendment jurisprudence ceases to treat secrecy as a prerequisite for privacy. I would not assume that all information voluntarily disclosed to some member of the public for a limited purpose is, for that reason alone, disentitled to Fourth Amendment protection. *Smith,* 442 U.S., at 749, 99 S.Ct. 2577 (Marshall, J., dissenting) ("Privacy is not a discrete commodity, possessed absolutely or not at all. Those who disclose certain facts to a bank or phone company for a limited business purpose need not assume that this information will be released to other persons for other purposes"); *see also Katz,* 389 U.S., at 351–352, 88 S.Ct. 507 ("[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected").

*Jones*, 132 S. Ct. at 955-57 (some internal citations and quotations omitted, emphasis added). *See also United States v. Paige,* 136 F.3d 1012, 1020 n.11 (5th Cir. 1998) ("[A] homeowner's legitimate and significant privacy expectation . . . cannot be entirely frustrated simply because, *ipso facto*, a private party (e.g., an exterminator, a carpet cleaner, or a roofer) views some of these possessions."); *United States v. Allen*, 106 F.3d 695, 699 (6th Cir. 1997) (individuals have a reasonable expectation of privacy in their hotel rooms even though management has a right to enter); *United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009) (tenants have reasonable expectation of privacy in their apartments even though landlords have a right to enter).

But the viability of the third party doctrine is also in doubt. In another case involving the dissemination of sensitive information, *Ferguson v. City of Charleston*, 532 U.S. 67, 70-73 (2001), the Supreme Court struck down a hospital policy that tested the urine samples of pregnant patients for drug use. Although the patients voluntarily shared the urine samples and the resulting test data with third party medical professionals, the Supreme Court found that they retained a reasonable expectation of privacy in the results of the tests, *id.* at 78; this holding is directly contrary to that of the earlier third party cases like *Miller*. In addition, the Supreme Court's increasing concern with the dissemination of personal information in the digital age was vividly illustrated in *City of Ontario v. Quon*, 130 S.Ct. 2619 (2010). That case involved electronic text communications of a government employee, which were stored by the text service provider. *Id.* at 2626. The Supreme Court stated that "[r]apid changes in the dynamics of communication and information transmission are evident not just in the technology itself but in what society accepts as proper behavior." *Id.* at 2629. It also specifically addressed cellular telephone use, noting that "[c]ell phone and text message communications are so pervasive that some persons may consider them to be essential means or

necessary instruments for self expression, even self-identification. That might strengthen the case for an expectation of privacy." *Id.* at 2630.

Further, within the context of emails at least one Circuit Court has held that one has a reasonable expectation of privacy irrespective of the fact that the email was provided to a third party. *United States v. Warshak,* 631 F.3d 266 (6th Cir. 2010).

To be sure the third party doctrine has come under attack and is no longer viable in many parts of the country. *See* Stephen E. Henderson, *Learning from All Fifty States: How to Apply the Fourth Amendment and Its State Analogs to Protect Third Party Information from Unreasonable Search,* 55 Cath. U.L.Rev. 373, 395 (2006) (listing California Colorado, Florida, Hawaii, Idaho, Illinois, Montana, New Jersey, and Pennsylvania as having rejected the federal third-party doctrine). The Vermont Supreme Court recently noted that Fourth Amendment

> privacy concerns not only our interest in determining *whether* personal information is revealed to another person but also our interest in determining to whom such information is revealed. A more complex understanding of privacy – one not limited to mere concern with avoiding exposure altogether – will inevitably acknowledge that our interest in privacy is, at least in part, an interest in to whom information concerning us is exposed.

*In re Search Warrant,* 71 A.3d 1158, 1177 (Vt. 2012) (emphasis in original) *cert. denied,* 133 S. Ct. 2391 (2013). Thus the Vermont Supreme Court believed "it is natural to view exposure to a third party – insofar as exposure is required at all – as less of a setback to one's privacy interests than exposure to an investigating officer" and noted "the protections of the Fourth Amendment are built around the recognition that one's relationship with a detached third party will be different than with an investigating officer." *Id.* at 1179 (citing *Johnson v. United States,* 333 U.S. 10, 13–14 (1948)). Accordingly, this Court should find that the third party doctrine is not a bar to the Defendant, and should likewise find the Government's dragnet infringed upon the respective telephone subscribers' reasonable expectation of privacy.

### 3. Prejudice

The Government used the information obtained from the Admin. Subpoenas in the subsequent applications for Pen Register/Trap & Track, and Title III Wiretaps. So, for example, the Affidavit of FBI Special Agent Rafael A. Fernandez makes reference to the toll records presumably obtained through the use of Admin. Subpoenas. *See* Aff. at p. 2 in misc. case no. 2011-18 (Gov't Bates # 665). *See also* Aff. of R. Fernandez at p. 2 in misc. case no. 2012-001 (Gov't Bates # 675); Aff. of R. Fernandez at p. 10 in misc. case no. 2012-009 (Gov't Bates # 684); Aff. of S. Querrard at p. 26-27 in misc. case no. 2012-006 (Gov't Bates # 754-55); Aff. of S. Querrard at p. 24-25 in misc. case no. 2012-009 (Gov't Bates # 824-25); Aff. of S. Querrard at p. 20-23 in misc. case no. 2012-012 (Gov't Bates # 893-96); Aff. of S. Querrard at p. 20, 28-31 in misc. case no. 2012-021 (Gov't Bates # 964, 972-75); Aff. of S. Querrard at p. 31-34 in misc. case no. 2013-042 (Gov't Bates # 1057-60); Aff. of S. Querrard at p. 36-39 in misc. case no. 2013-051 (Gov't Bates # 1147-50).

Accordingly, the use of the information obtained via the subject Admin. Subpoenas was used to obtain Pen Register/Trap & Trace orders and, in turn, Title III wiretaps orders, the cumulative effect on the evidence obtained by the Government is not harmless under any standard. Thus, the Defendant has demonstrated sufficient prejudice.

### V. CONCLUSION

The Government's dragnet approach in issuing over 375 Admin. Subpoenas is just the type of factual scenario that this Court should conclude goes too far. In its attempt to use its authority under 21 U.S.C. § 876, the Government casts its net too far and too wide, and in doing so drags down with it the Fourth Amendment rights of those individuals snarled in the net. The Court should suppress the evidence obtained via this dragnet to ensure that the Government does not subvert the citizens of this country's reasonable expectation of privacy.

**WHEREFORE** the Defendant respectfully requests that the Court enter an Order suppressing all evidence (both direct and derivative) obtained from the issuance of the Admin. Subpoenas.

Respectfully Submitted,                                                                 Dated October 15, 2013


By: _____
Joseph A. DiRuzzo, III
USVI Bar #1114
FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was filed on ECF on October 15, 2013, and a NEF will be delivery upon the following:

Kelly B. Lake
Kim Lindquist
United State Attorney's Office
Federal Building & U.S. Courthouse
5500 Veterans Drive
Suite 260
St Thomas, VI 00802
Email: Kelly.Lake2@usdoj.gov

Judith Bourne
The Bourne Law Office, PLLC
P. O. Box 6458
St. Thomas, VI 00804
jbourne@islands.vi

Gabriel J. Villegas
Edson A Bostic
Federal Public Defender
1019 Beltjen Place Suite 1
P.O. Box 1327
St. Thomas, VI 00822-3450
Email: gabriel_villegas@fd.org

Robert L. King
Birch, Dejongh & Hindels
1330 Estate Taarnberg
St. Thomas, VI 00802
Email: rlking@attyking.com

Treston E Moore
MOORE DODSON & RUSSELL, P.C.
P.O. Box 310, E.G.S. (14A Norre Gade)
St. Thomas, VI 00804-0310
EMAIL: tresmoore@aol.com

Arturo R. Watlington, Jr.
Law Offices of Arturo Watlington
#3 Store Gronne Gade
P.O. Box 261
St. Thomas, VI 00804
arwatlington@yahoo.com

Nizar A. DeWood
The Dewood Law Firm
2006 Eastern Suburb, Suite 101
Christiansted, VI 00820
dewoodlaw@me.com


By: _____
Joseph A. DiRuzzo, III
USVI Bar #1114
FUERST ITTLEMAN DAVID & JOSEPH, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com